# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4907-16T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

E.R.,

    Defendant-Appellant,

and

J.S.,

    Defendant.

---

IN THE MATTER OF THE GUARDIANSHIP
OF S.S., J.S., Jr., AND J.S.,

    Minors.

---

Submitted October 22, 2018 – Decided October 29, 2018

Before Judges Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0130-17.

Joseph E. Krakora, Public Defender, attorney for appellant (Janine M. Cerra, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Peter R. Van Brunt, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith A. Pollock, Deputy Public Defender, of counsel; Christopher A. Huling, Designated Counsel, on the brief).

PER CURIAM

Defendant, E.R., appeals from a June 29, 2017 Family Part order terminating her parental rights to three of her five children: Samantha, born in April 2013; Johnny, born in June 2014; and Joe, born in June 2015.[1] Defendant contends the Division of Child Protection and Permanency (Division) failed to

---

[1] We use initials and pseudonyms to identify the parties, and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(12). J.S., the biological father of all three children, surrendered his parental rights in March 2017, and is not a party to this appeal. Defendant's two other biological children are not in her custody and are not parties to this appeal.

prove all four prongs of N.J.S.A. 30:4C-15.1(a) by clear and convincing evidence. The Law Guardian joins the Division in supporting the judgment.

Based on our review of the record and prevailing legal standards, we are satisfied the evidence in favor of the guardianship petition overwhelmingly supports the judge's decision to terminate defendant's parental rights. Accordingly, we affirm substantially for the reasons stated by Judge Bernadette N. DeCastro in her comprehensive and well-reasoned written opinion that accompanied the order.

Accordingly, we will not recite in detail the complete history of the Division's involvement with defendant. Instead, we incorporate by reference Judge DeCastro's thorough factual findings and legal conclusions, and highlight the most pertinent facts.

The Division first became involved with the family in November 2014, following allegations that their home was uninhabitable and wreaked of marijuana; the children were filthy; and defendant had recently committed an act of domestic violence against J.S. Although the Division referred both parents for drug and alcohol evaluations, and parenting skills courses, neither parent complied with those services.

A-4907-16T3

In the following three months, the Division received two additional referrals reporting the family's unstable housing and defendant's violence. The children remained at "home," which included their paternal grandfather's home in New York State, a motel room in North Bergen, a friend's apartment in Union City, and a motel room in Union City. The Division continued to provide services, but defendant and J.S. failed to comply.

The Division removed Samantha and Johnny from defendant's care in March 2015 after J.S. told the caseworker that defendant choked Johnny. Although defendant denied the allegation, and J.S. later recanted it, defendant "blurted that she does not feel the current living situation overall is the most appropriate for the children and that she feels the children should enter foster care." Following a brief placement in foster care, Samantha and Johnny were placed with J.S.'s mother, Rebecca. After Joe was born in June 2015, he was released from the hospital and also placed with Rebecca. All three children remain with Rebecca who is eager to adopt them.

Following the children's removal, defendant underwent a psychological evaluation and parenting assessment with Dr. Gerard A. Figurelli. The Division referred defendant for counseling, including anger management, domestic violence skills training, and parenting skills training. During the two years of

services aimed toward reunification, defendant sporadically complied, but was not capable of providing a stable home and safe parenting for Samantha, Johnny and Joe. Further, she had not visited the children in the eight months prior to trial, and as Judge DeCastro observed, "for all purposes left their care and custody to the Division."

At the two-day guardianship trial, Dr. Figurelli testified about, among other things, his bonding assessment of the children with defendant, and with Rebecca. In particular, Johnny had a fluid but limited attachment to defendant, but their bond was not secure. Joe, however, did not demonstrate a significant attachment to defendant. Conversely, Johnny and Joe both had a "strong positive emotional attachment to [Rebecca]," and they viewed her as "the central parental caretaker in their experiential world." Accordingly, termination of defendant's parental rights would result in the two boys experiencing "little or no harm at all."

Further, Dr. Figurelli observed that Samantha had "strong" yet "insecure" attachments to both defendant and Rebecca. He noted that permanently severing the relationship between Samantha and defendant would "be difficult for [Samantha]." However, Samantha primarily needed "consistent care and stability in her life," which would be essential for "her ultimate long term . . .

5

growth, maturation, and development." Rebecca was "someone who is capable of adequately assessing the needs of the children," which Dr. Figurelli considered a "significant mitigating factor" regarding Samantha's attachment to defendant and Rebecca.

The Division also presented the testimony of two caseworkers and Rebecca. Defendant did not appear at trial and her attorney did not present any evidence on her behalf.

In order for the court to terminate parental rights, the Division must satisfy the following four prongs of the "best interests of the child" test by clear and convincing evidence:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement

outside the home and the court has considered alternatives to termination of parental rights; and

(4) Termination of parental rights will not do more harm than good.

[N.J.S.A. 30:4C-15.1(a)(1)-(4).]

These four prongs are not independent of one another. Rather, they "are interrelated and overlapping[,] . . . designed to identify and assess what may be necessary to promote and protect the best interests of the child." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006). Parental fitness is the crucial issue. In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999). Determinations of parental fitness are very fact sensitive and require specific evidence. Ibid. Ultimately, "the purpose of termination is always to effectuate the best interests of the child, not the punishment of the parent." Id. at 350.

In her comprehensive opinion, the trial judge found that the Division had proven all four prongs of N.J.S.A. 30:4C-15.1(a), and that termination of defendant's parental rights was in the children's best interests. On this appeal, our review of the trial judge's decision is limited. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). We defer to her expertise as a Family Part judge, Cesare v. Cesare, 154 N.J. 394, 412 (1998), and we are bound by her

7

factual findings as long as they are "supported by adequate, substantial, and credible evidence." R.G., 217 N.J. at 552.

Having reviewed the record in light of those legal standards, we conclude that Judge DeCastro's factual findings are fully supported by the record and, in light of those facts, her legal conclusions are unassailable. Further, her opinion tracks the statutory requirements of N.J.S.A. 30:4C-15.1(a), and accords with K.H.O., 161 N.J. 337, In re Guardianship of D.M.H., 161 N.J. 365 (1999), and New Jersey Division of Youth & Family Services v. F.M., 211 N.J. 420 (2012).

In sum, the judge credited Dr. Figurelli's "uncontroverted findings and opinions," and determined, "The children have suffered harm because [defendant] has not visited them in over [eight] months. She has not complied with any services offered to her including transportation to visits." Accordingly, the judge accepted Dr. Figurelli's opinion that defendant was not capable of parenting her children at the time of trial, nor would she be able to do so in the foreseeable future. Moreover, "delaying permanency in this case would not be in the best interest of the children."

Defendant's argument regarding the insufficiency of the evidence are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-4907-16T3

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-4907-16T3